UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANA ROSADO VALERIO,

      Petitioner,

  v.                                      19-CV-519
                                           Decision & Order

WILLIAM P. BARR, et al.,

      Defendants.

---

Ana Rosado Valerio has been detained in United States Immigration and Customs Enforcement custody since March 1, 2018. Docket Item 1. On April 19, 2019, Rosado Valerio filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity of her detention at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. *Id.* She claims that her detention violates the United States Constitution because she has not been given an individualized hearing regarding her risk of flight or dangerousness, and she requests a hearing at which the government has the burden of proving by clear and convincing evidence that her continued detention is justified. *Id.* On June 10, 2019, the respondents answered the petition, Docket Items 8, 9; and on June 21, 2019, Rosado Valerio replied. Docket Item 11.

For the reasons that follow, this Court conditionally grants Rosado Valerio's petition.

**FACTUAL AND PROCEDURAL BACKGROUND**

The following facts, taken from the record, come largely from filings with the United States Department of Homeland Security, Immigration and Customs Enforcement ("DHS").

Rosado Valerio is a native of the Dominican Republic. *See* Docket Item 8-1 at 2; Docket 1 at 3. She attempted to enter the United States at New York, New York, around October 12, 1999, with fraudulent documents; as a result she was removed to the Dominican Republic and prohibited from reentering or attempting to reenter the United States for five years. *See* Docket Item 8-1 at 2.

Later in 1999, Rosado Valerio re-entered the United States through Texas without authorization to return and in violation of her five-year ban on re-entering. *Id.* While Rosado Valerio lived unlawfully in the United States between 2001 and 2015, she filed various petitions and applications to change her alien status. *Id.* at 2-3.

On March 28, 2017, Rosado Valerio pleaded guilty in New York State Supreme Court to Criminal Sale of a Controlled Substance in the 2nd Degree, in violation of New York State Penal Law Section 220.41. *Id.* at 3. She was sentenced to three years' imprisonment and five years' post-release supervision. *Id.*

An Immigration Detainer – Notice of Action based on the final removal order from 1999 was sent to Rosado Valerio at the Taconic Correctional Facility on August 9, 2017. *Id.* at 4. On August 16, 2017, she was served with a Notice of Intent/Decision to Reinstate Prior Order. *Id.* But she expressed her fear of removal and refused to sign the form. *Id.* On March 1, 2018, Rosado Valerio was released by the New York State

Department of Corrections and Community Supervision and placed in DHS custody.  *Id.* at 4.

United States Citizenship and Immigration Services interviewed Rosado Valerio regarding her reasonable-fear claim on April 27, 2018, and referred her to an Immigration Judge ("IJ") for a Withholding-Only hearing.  *Id.*  The purpose of that hearing was to determine whether she was eligible for withholding of removal under Section 241(b)(3) of the Immigration and Nationality Act or under the Convention Against Torture.  *Id.*

In the meantime, DHS reviewed Rosado Valerio's custody status.  *Id.* at 5.  On June 25, 2018, DHS notified her that it had decided to continue her detention because it was not confident that she would abide by the conditions of release or refrain from further criminal behavior.  *Id.*  A hearing before the IJ in Rosado Valerio's withholding proceedings was scheduled for July 17, 2018.  *Id.*

On July 12, 2018, Rosado Valerio requested an adjournment of the proceedings in order to get an attorney, and her hearing was adjourned to July 31, 2018.  *Id.*  On July 31, 2018, the hearing was again adjourned—this time to August 21, 2018— because Rosado Valerio's attorney filed additional papers.  *Id.* at 6.  Her attorney did not appear in August, however, and the hearing therefore was adjourned to September 11, 2018.  *Id.*  Her attorney then indicated that he wanted to withdraw from her case, and he again did not appear on September 11, 2018.  So the hearing was adjourned to October 2, 2018, and Rosado Valerio appeared with new counsel on that date.  *Id.*

On November 1, 2018, Rosado Valerio submitted an Application for Asylum and Withholding of Removal.  *Id.*  At a hearing held on November 28, 2018, the IJ found that

3

Rosado Valerio did not meet her burden, denied her requests for withholding, and ordered her removed to the Dominican Republic.  *Id.*

Rosado Valerio appealed the IJ's decision to the Board of Immigration Appeals ("BIA").  *Id.*  While the appeal was pending, on December 10, 2018, DHS decided to continue Rosado Valerio's detention after a review of her file and a personal interview.  *Id.* at 7.  On March 8, 2019, after further review, DHS again decided to continue her detention.  *Id.*

The BIA dismissed Rosado Valerio's appeal on May 6, 2019, and DHS prepared to remove her.  *Id.*  On May 22, 2019, however, Rosado Valerio petitioned the Second Circuit for review of the BIA's removal order and moved for an emergency stay of removal.  *Id.*  On May 31, 2019, the Second Circuit granted a temporary stay of removal.  *Id.*  DHS conducted a further custody review in May 2019 and determined that Rosado Valerio would remain in DHS custody pending a ruling in the Second Circuit.  *Id.*

Rosado Valerio remains in DHS custody at BFDF.

## DISCUSSION

### I. HABEAS PETITION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  The government maintains that Rosado Valerio is validly detained under 8 U.S.C. § 1226(c) as a noncitizen with criminal convictions who is not yet subject to a final order of removal.  Docket Item 9 at 11.

Rosado Valerio disagrees. She contends that her continued detention violates her "Due Process rights." Docket Item 1 at 10. And she argues that the due process clause of the Fifth Amendment requires "the government [to] establish, at an individual hearing before a neutral decision maker, that Petitioner's detention is justified by clear and convincing evidence of flight risk or danger, even after consideration whether alternatives to detention could sufficiently mitigate that risk." *Id.*

Because Rosado Valerio is proceeding *pro se*, this Court holds her submissions "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## II. DUE PROCESS

The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of . . . liberty . . . without due process of law." U.S. CONST. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyer v. Doe*, 457 U.S. 202, 210 (1982). At the same time, however, Congress has "broad power over naturalization and immigration, [permitting it to] make[] rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

The Supreme Court "has held that the Due Process Clause protects individuals against two types of government action." *United States v. Salerno*, 481 U.S. 739, 746

5

(1987). "So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' . . . or interferes with rights 'implicit in the concept of ordered liberty.'" *Id.* (internal citations omitted). "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *Id.* "This requirement has traditionally been referred to as 'procedural' due process." *Id.*

Rosado Valerio claims that her continued detention "depriv[es] [her] of liberty without due process of law." Docket Item 1 at 10. The Due Process Clause is not offended by the mandatory detention of aliens without a hearing for the "*brief period necessary* for . . . removal proceedings." *Demore*, 538 U.S. at 513 (emphasis added). But "a lawful permanent resident alien . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532 (Kennedy, J., concurring).

In *Demore*, the Court explicitly noted that "in the majority of cases [§ 1226(c) detention] lasts less than the 90 days . . . considered presumptively valid in *Zadvydas*." *Id.* at 529. Diving even deeper, the Court noted that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days." *Id.* And "[i]n the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the [BIA], appeal takes an average of four months, with a median time that is slightly shorter." *Id.*

"In light of the substantial uncertainty surrounding the detention provisions in [§] 1226(c)," *Hechavarria v. Sessions*, 891 F.3d 49, 58 (2d Cir. 2018), this Court "has evaluated procedural due process challenges to immigration detention with a two-step

6

inquiry," *Hemans*, 2019 WL 955353, at *5 (W.D.N.Y. Feb. 27, 2019). "As the first step, the Court considers whether the alien's detention has been unreasonably prolonged." *Id*. "If it has not, then there is no procedural due process violation." *Id*. "But if it has, the Court proceeds to step two and 'identifies the specific dictates of due process' by considering the *Mathews v. Eldridge* factors." *Id*. (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). "If the government has not provided the procedural safeguards dictated by the *Mathews* factors to an alien subject to unreasonably prolonged detention, then his continued detention violates procedural due process." *Id*.

### A. Rosado Valerio's Unreasonably Prolonged Detention Without a Hearing

"The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (cited in *Jennings v. Rodriguez,* 138 S. Ct. 830, 852 (2018)). "[W]hen weighing the lawfulness of continued detention of an alien under the Due Process Clause" several factors determine whether detention is unreasonably prolonged. *Jamal A. v. Whitaker*, 2019 WL 549722, at *3 (D. Minn. Jan. 22, 2019). For example, this Court has considered "(1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the parties; and (4) the likelihood that the removal proceedings will result in a final order of removal." *Hemans*, 2019 WL 955353, at *6.

First, and most important, courts consider the length of detention. Rosado Valerio has been in DHS custody since March 1, 2018, about sixteen months; that is a year longer than the four-month average period contemplated in *Demore*. *See* 538 U.S. at 529. "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *Muse v. Sessions*, 2018 WL

4466052, at *4 (D. Minn. Sept. 18, 2018) (and cases cited therein); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 864 (2018) (Breyer, J., dissenting) (individuals with mental illness "dangerous to themselves or to others may be confined involuntarily . . . [with] the right to review the circumstances at least annually").  In fact, courts have found detention shorter than a year to be unreasonably prolonged as part of procedural due process analysis.  *See Vargas v. Beth*, 2019 WL 1320330, at *8 (E.D. Wis. Mar. 22, 2019) ("approximately nine and a half months"); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) ("over seven months," and "over nine months" by the next removal-related hearing); *Hernandez v. Decker*, 2018 WL 3579108, at *1, *12 (S.D.N.Y. July 25, 2018) (nine months); *Sajous v. Decker*, 2018 WL 2357266, at *1, *12 (S.D.N.Y. May 23, 2018) (over eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 720 (D. Md. 2016) (exceeding ten months); *see also Sopo v. U.S. Attorney General*, 825 F.3d 1199, 1218 (11th Cir. 2016) ("a criminal alien's detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case").  The length of Rosado Valerio's sixteen-month detention therefore supports her argument that her detention without an individualized hearing has been unreasonably prolonged.

Second, courts consider the conditions of detention.  Whether "the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention" factors into the reasonableness of Rosado Valerio's detention.  *Sajous*, 2018 WL 2357266, at *11.  "The more that the conditions under which the alien is being held resemble penal confinement, the stronger h[er] argument that [she] is entitled to a bond hearing."  *Muse*, 2018 WL 4466052, at *5.

Here, the government has submitted the declaration of a BFDF employee regarding the conditions of Rosado Valerio's detention. *See* Docket Item 8-3. In that declaration, the government avers that the facility is unlike a prison because "most persons . . are not locked in a cell," they "do not face the same level of restrictions typical for someone held at a prison," and they "ordinarily may move throughout the BFDF without being required to wear handcuffs or legcuffs." *Id.* at 3-4. "Six of the dorm units are open-dorm style," but three others—for detainees with criminal histories or female detainees—have cell doors that close at night. *Id.* at 3. And "persons held at BFDF [are] required to wear . . . restraints . . . when being booked in or booked out" or when they are "facing discipline [and are] brought to the Special Housing Unit ("SHU")." *Id.* at 4.

Because of the cells, restraints, and discipline in the SHU, conditions at BFDF certainly "resemble penal confinement" for at least some persons detained there. *Muse*, 2018 WL 4466052, at *5. And while the record contains no facts about the particular conditions of Rosado Valerio's confinement, she certainly has experienced restraints and is likely to have been locked in a cell both because she has a criminal history and because she is a female detainee. *See* Docket Item 8-3 at 3. So the government has not shown that Rosado Valerio's detention is "meaningfully different from [detention in] a penal institution." *Sajous*, 2018 WL 2357266, at *11. This factor therefore weighs in Rosado Valerio's favor.

Third, courts consider whether either side is responsible for the delay. The Second Circuit has found that this factor weighs against finding detention unreasonable when an alien has "'substantially prolonged his stay by abusing the processes provided

9

to him,'" but not when "an immigrant . . . [has] simply made use of the statutorily permitted appeals process." *Hechavarria*, 891 F.3d at 56 n.6 (quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)).

Here, DHS detained Rosado Valerio on March 1, 2018, and served her with a Notice of Referral to Immigration Judge on May 17, 2018, for a hearing on her reasonable-fear claim. Docket Item 8-1 at 4. That hearing originally was scheduled for June 28, 2018, but was postponed to July 31, 2018, because Rosado Valerio sought representation. *Id.* at 5. The hearing was again adjourned several times because of Rosado Valerio's new filings or her counsel's absence and eventual withdrawal, and it was finally held on November 28, 2018. *Id.* at 5-6. After being ordered removed, Rosado Valerio made use of the appeals process, first by appealing the IJ's decision to the BIA and, when that appeal was unsuccessful, filing a petition for review in the Second Circuit. *Id.* at 6-7.

Although Rosado Valerio is responsible for at least some of the delay, the four-month delay before her hearing was first scheduled and the seven months after it was held cannot be attributed to her. So for five of her sixteen months in detention, Rosado Valerio may have contributed to the delay; but for the remaining time—almost a year—she sat in detention awaiting a decision from the IJ, the BIA, and now the Second Circuit. Therefore, this factor does not make her continued detention reasonable.

Finally, courts consider the likelihood that the removal proceedings will result in a final order of removal. This Court declines to weigh the merits of Rosado Valerio's

claims pending before the Second Circuit; in any event, neither side has included much about the substantive issues in its briefs to this Court.[1]

After weighing all these factors, this Court finds that Rosado Valerio's detention has been unreasonably prolonged. Therefore, this Court turns to the second step of the two-part inquiry to determine what remedy her unreasonably-prolonged detention demands.

### B. The Process Due to Rosado Valerio

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors," *id.* at 335, "(A) the private interest affected; (B) the risk of erroneous deprivation of that interest through the procedures used; and (C) the governmental interest at stake." *Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017). Here, that analysis leads to the conclusion that Rosado Valerio's continued detention without an individualized hearing at which the government bears the burden of justifying her detention by clear and convincing evidence fails to "comport with the 'fundamental fairness' demanded by the Due Process Clause." *Schall v. Martin*, 467 U.S. 253, 263 (1984).

Rosado Valerio's interest in her freedom pending the conclusion of her removal proceedings deserves great "weight and gravity." *Addington v. Texas*, 441 U.S. 418,

---

[1] The Court notes, however, the government's position that there is no institutional barrier to removing Rosado Valerio to the Dominican Republic other than her proceedings pending before the Second Circuit. Docket Item 8-1 at 8. Indeed, as the government notes, she was removed to her native country once before. *Id.* at 2.

11

427 (1979). Rosado Valerio has an obvious interest in her "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint." *Zadvydas*, 533 U.S. at 690. Moreover, while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (emphasis in original), Rosado Valerio has not conceded her deportability, and the resolution of that issue remains pending before the Second Circuit. In fact, her interest in liberty *in the United States* must indeed be strong for her to subject herself to unreasonably-prolonged detention in a jail-like facility while contesting her deportability. *See Fremont v. Barr*, 2019 WL 1471006, at *6 n.7 (W.D.N.Y. Apr. 3, 2019).

And there appears to be good reason for that strong interest.[2] Rosado Valerio claims that her sister is a United States citizen, her brother is a lawful permanent resident, and her daughter is protected under Deferred Action for Childhood Arrivals. *See Rosado Valerio v. Barr*, No. 19-519 (2d Cir.), Docket Item 16 at 6. These family members live not in the Dominican Republic, where the government wishes to send her, but instead in the United States, where Rosado Valerio herself has lived for about twenty years. *See id.*; Docket Item 8-1 at 2. Thus, if Rosado Valerio chose not to challenge her removal, she would "lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual." *Landon*, 459 U.S. at 34; *see also*

---

[2] Considering Rosado Valerio's pro se status in this proceeding, and in light of the time-sensitive nature of habeas proceedings alleging the invalidity of unreasonably-prolonged immigration detention, this Court has looked to Rosado Valerio's filings in her Second Circuit proceeding for the limited purpose of gaining a better understanding of her liberty interests. But even without this information, this Court would presume that Rosado Valerio's liberty interests in freedom from detention in the United States have great weight for the reasons explained in *Fremont*, 2019 WL 1471006, at *6 n.7.

*Ms. L. v. U.S. Immigration and Customs Enf't.*, 310 F. Supp. 3d 1133, 1143 (S.D. Cal. 2018) (family separation as part of immigration enforcement likely to violate due process).

This Court recognizes that the government's interest in detaining Rosado Valerio also may be strong. The government contends that her risk of flight and disregard for the law justify her continued detention. Docket Item 9 at 14. Rosado Valerio is detained under 8 U.S.C. § 1226(c), which applies to aliens who fall "into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 138 S. Ct. at 837. "[A]liens detained under its authority are not entitled to be released under any circumstances other than those expressly recognized by the statute."[3] *Id.* at 846. Thus, in mandating the detention of criminal aliens, the statute reflects a congressional purpose of reducing the risk of flight and danger to the community. *See Demore*, 538 U.S. at 518-19 (Congress found that "deportable criminal aliens who remained in the United States often committed more crimes before being removed" and that "20% of deportable criminal aliens failed to appear for their removal hearings"[4]). "The government's interest in preventing crime by arrestees is both legitimate and compelling." *Salerno*, 481 U.S. at 749. And general concerns about the risk of flight

---

[3] The exception from mandatory detention is a "limited authorization for release for witness-protection purposes," *Jennings*, 138 S. Ct. at 846, not applicable here.

[4] The Court noted that this number included aliens who were released from custody *without* an individualized bond hearing. *Demore*, 538 U.S. at 519 n.4 ("Although the Attorney General had the authority to release these aliens on bond, it is not clear that *all* of the aliens released were in fact given individualized bond hearings.") (emphasis in original).

highlight the government's compelling interest in preserving its "ability to later carry out its broader responsibilities over immigration matters."  *Doherty*, 943 F.2d at 211.

Finally, this Court concludes that in light of the procedures used thus far, there is a significant risk of an erroneous deprivation to Rosado Valerio's liberty interests. Section 1226(c) prohibits the government from offering a detainee the opportunity to challenge whether she is, in fact, a danger or a flight risk.  *Jennings*, 138 S. Ct. at 846. Now that Rosado Valerio's detention has become unreasonably prolonged, due process requires *some* opportunity to be heard "at a meaningful time and in a meaningful manner," *Armstrong*, 380 U.S. at 552, to challenge the statute's assumptions as applied to her.

An opportunity to be heard in a meaningful manner necessarily requires a hearing that "satisfies the constitutional minimum of fundamental fairness."  *Santosky v. Kramer*, 455 U.S. 745, 756 n.8 (1982) (internal citation omitted).  When the government seeks the civil detention of a person to affect a compelling regulatory purpose, balancing the liberty interest at stake against the government's interests requires the government to show by clear and convincing evidence that detention is necessary to serve a compelling interest.  *See Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *Addington*, 441 U.S. at 432-33; *see also Santosky*, 455 U.S. at 756 (quoting *Addington*, 441 U.S. at 424) ("clear and convincing evidence" standard applies "'when the individual interests at stake in a . . . proceeding are both 'particularly important' and 'more substantial than mere loss of money'").  That standard applies equally here.  To sustain the prolonged detention of an alien subject to removal proceedings based on its general interests in immigration detention, the "[g]overnment [is] required, in a 'full-blown

14

adversary hearing,' to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person,'" *Foucha*, 504 U.S. at 81 (quoting *Salerno*, 481 U.S. at 751), or ensure that the alien will appear for any future proceeding.[5] This requires consideration of less restrictive alternatives to detention. *See id.*; *cf. United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less restrictive alternative is offered to a" regulation burdening a constitutional right, "it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals.").

Rosado Valerio's § 1226(c) detention has been unreasonably prolonged, and § 1226(c) does not require an individualized hearing where the government must demonstrate by clear and convincing evidence that no conditions of release can reasonably serve the government's compelling regulatory interests in detaining her. The statute therefore is unconstitutional as applied to her, and her continued detention violates the Due Process Clause. Rosado Valerio therefore must be released unless, no later than fourteen days from the date of this decision, the government demonstrates by clear and convincing evidence before a neutral decision maker that Rosado Valerio's continued detention is necessary to serve a compelling regulatory purpose—such as preventing flight or protecting others or the community. The decision maker also must consider—and must address in any decision—whether there is clear and convincing

---

[5] As this Court explained in *Hemans*, 2019 WL 955353, at *8 n.7, a pretrial detainee's right to a speedy trial distinguishes the interests supporting the evidentiary standard traditionally applicable to flight-risk determinations for pretrial detention purposes from what is required after an unreasonably-prolonged immigration detention.

15

evidence that no less restrictive alternative to physical detention, including release on bond in an amount the petitioner can reasonably afford, with or without conditions, would also reasonably address those purposes.

## **CONCLUSION**

For the reasons stated above, Rosado Valerio's petition, Docket Item 1, is conditionally GRANTED.  **Within fourteen calendar days of the date of this decision**, the government must release Rosado Valerio from detention unless a neutral decision maker conducts an individualized hearing to determine whether her continued detention is justified.  At any such hearing, the government has the burden of demonstrating by clear and convincing evidence that Rosado Valerio's continued detention is necessary to serve a compelling regulatory purpose, such as protecting against danger to the community or risk of flight.  Whether detention is necessary to serve a compelling regulatory purpose requires consideration of whether a less restrictive alternative to detention would also address the government's interests.  In other words, the decision maker must find that no condition or combination of conditions of release can reasonably ensure Rosado Valerio's appearance and the safety of the community or any persons—that is, even with conditions, Rosado Valerio presents an identified and articulable risk of flight or threat to an individual or the community.

SO ORDERED.

Dated:  July __10_, 2019
       Buffalo, New York

                                          *s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE